**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**In re:**

**JULIANA RIAHI**
**FKA JULIANA VLALUKIN**
**FKA JULIANA VLALUKIN RIAHI**
**FKA JULIANA KHALIFEH,**

          **Debtor.**

**CHAPTER 11**

**CASE NO. 13-11487-RGM**

**FIRST TENNESSEE BANK NATIONAL**
**ASSOCIATION SUCCESSOR THRU**
**MERGER WITH FIRST HORIZON HOME**
**LOAN CORPORATION,**

          **Plaintiff/Movant.**

**vs.**

**JULIANA RIAHI,**

          **Defendant.**

## MOTION FOR RELIEF

**NOTICE**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.**

**ATTEND THE PRELIMINARY HEARING SCHEDULED TO BE HELD ON JULY 17, 2013 AT 9:30 AM IN THE U. S. BANKRUPTCY COURT, ALEXANDRIA DIVISION 200 SOUTH WASHINGTON STREET, ALEXANDRIA, VIRGINIA, COURTROOM # 2, 2ND FLOOR.**

**Brandon R. Jordan, Esquire**
**Counsel for Plaintiff**
**Samuel I. White, P.C.**
**1804 Staples Mill Road, Suite 200**
**Richmond, VA 23230**
**State Bar #72170**
**(804) 290-4290**

**NOTICE FROM SAMUEL I. WHITE, P. C.**

**PURSUANT TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, WE ADVISE YOU THAT SAMUEL I. WHITE, P. C., COUNSEL FOR THE PLAINTIFF/MOVANT, IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE INDEBTEDNESS REFERRED TO HEREIN, AND ANY INFORMATION WE OBTAIN FROM YOU WILL BE USED FOR THAT PURPOSE.**

## MOTION FOR RELIEF

The Motion of First Tennessee Bank National Association successor thru merger with First Horizon Home Loan Corporation, by Counsel, hereby moves the Court for relief from the automatic stay and in support thereof represents unto the Court:

1.   This Court has Jurisdiction over this proceeding pursuant to 28 U. S. C. Sections 157 and 1334 and 11 U. S. C. 362 (d), and that this matter is a core proceeding.

2.   The Debtor filed a Petition under Chapter 11 of the Bankruptcy Code on April 2, 2013.

3.   The Debtor is the owner of the real property located at 1226 Potomac School Road, McLean, VA 22101, which property is described as:

> **All that certain lot or parcel of land situate in the County of Fairfax, Commonwealth of Virginia, and being more particularly described as follows:**
>
> **LOT 53, SECTION 3, EVERMAY, as the same appears duly dedicated, platted and recorded in Deed Book 3319, at Page 279, among the land records Fairfax County, Virginia.**
>
> **AND BEING the same property as conveyed unto the Grantor by Deed dated 03/01/2001, and recorded on 03/07/2001, in Deed Book 11755, at Page 0374, among the aforementioned land records.**

4.   Upon information and belief, Plaintiff is the holder of a certain Deed of Trust Note dated March 20, 2007, which Note is secured by a Credit Line Deed of Trust of even date therewith and duly recorded.

5.   The account is contractually due for the October, 2011 installment, with reinstatement amount through June 17, 2013 being $8,351.20, calculated as follows:

| | |
|---|---:|
| 18 monthly payments (10/01/11-03/01/13) @ $346.45/month | $6,236.10 |
| 1 monthly payment (04/01/13) @ $280.45 (partial) | $280.45 |
| 2 monthly payments (05/01/13-06/01/13) @ $346.45/month | $692.90 |
| Accrued Late Charges | 217.00 |
| Bankruptcy Fees and Costs – Objection to Debtor's Motion to Impose Stay | 348.75 |
| Bankruptcy Fees and Costs - Motion For Relief | 576.00 |
| Total | $8,351.20 |

6.        The unpaid principal balance due on said note is $128,318.93, and the approximate payoff balance is $134,400.00.

7.        It is the opinion of the Plaintiff that the Debtor is financially unable to maintain said obligation and that Plaintiff will suffer irreparable injury, loss and damage if it is not permitted to foreclose upon its security interest; otherwise Plaintiff is without adequate protection.

**WHEREFORE**, Plaintiff prays that it be granted relief from the provisions of the automatic stay with regard to the said real property and further requests that the fourteen (14) day stay be waived incident to any Order entered incident to the Motion for Relief herein.

FIRST TENNESSEE BANK NATIONAL ASSOCIATION SUCCESSOR THRU MERGER WITH FIRST HORIZON HOME LOAN CORPORATION

By: **/s/ BRANDON R. JORDAN**
Eric David White, Esquire, VSBN 21346
Michael T. Freeman, Esquire, VSBN 65460
David W. Carter, Esquire, VSBN 70875
Kimberly B. Lane, Esquire, VSBN 78720
Brandon R. Jordan, Esquire, VSBN 72170
Johnie R. Muncy, Esquire, VSBN 73248
Samuel I. White, P. C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel: (804) 290-4290
Fax: (804) 290-4298
bjordan@siwpc.com

### CERTIFICATE

I hereby certify that a true copy of the foregoing Motion was served by regular mail or email this 18th day of June, 2013, on all necessary parties including Office of the U.S. Trustee, 115 South Union Street, # 210, Alexandria, VA 22314; Linda D. Regenhardt, Esquire, Counsel for Debtor, 8500 Leesburg Pike, Suite 7000, Vienna, VA 22182; Juliana Riahi, Debtor, 1226 Potomac School Road, McLean, VA 22101; and to those on the attached mailing list.

**/s/ BRANDON R. JORDAN**
Samuel I. White, P. C.

Mailing List

Oak Harbor Capital VI, LLC
2001 Western Ave., Suite 400
C/O Weinstrin and Riley, PS
Seattle, WA 98127

Silbley Memorial Hospital
5255 Loughboro Road NW
Washington, DC 20016-2695

UMB Bank NA
PO Box 419734
Kansas City, MO 64141-6734

Verizon
500 Technology Drive
Saint Charles, MO 63304

American Express
PO Box 1270
Newark, NJ 07101-1270

Bank of America
4161 Piedmont Parkway
Greensboro, NC 27410-8110

Discover Financial Srvcs, LLC
PO Box 15316
Wilmington, DE 19850

Emergency Medicine Associates,
20010 Century Blvd Suite 200
Germantown, MD 20874

Farmer's Insurance
4680 Wilshire Blvd
Los Angeles, CA 90010

HSBC Best Buy
1405 Foulk Road
Wilmington, DE 19808

HSBC Saks Fifth Avenue
PO Box 10327
Jackson, MS 39289

John Polishuk C/O Busman & Busman
PO Box 7514
Fairfax Station, VA
22039-7514

## MULTISTATE HOME EQUITY LINE OF CREDIT AGREEMENT
## AND DISCLOSURES UNDER THE FEDERAL TRUTH-IN-LENDING ACT

THIS AGREEMENT, entered into on the **20th** day of **March, 2007**, (the "Effective Date") is a binding contract between the parties signing below. The Agreement contains your promissory note and also the disclosures required by the Federal Truth-In-Lending Act. Please read all of it and keep it with your permanent records. In this Agreement, the words we, us, our and Lender mean **FIRST HORIZON HOME LOAN CORPORATION**,
a **KANSAS corporation**. The words you, your, and Borrower mean the Borrower or Borrowers who have signed this Agreement, jointly and severally. The words card or credit card mean VISA Card. Provisions relating to credit cards apply only if credit cards are issued on your Account.

    1. **Term.** The "Term" of this Agreement commences on the Effective Date and consists of two consecutive periods, the "Draw Period" and the "Repayment Period." The length of each period shall be as designated in Paragraph 11. The Draw Period begins on the Effective Date; the Repayment Period begins the day after the Draw Period ends.

    2. **Credit Line and Advances.** Subject to the terms and conditions of this Agreement, which you promise to follow, we are committed during the Draw Period to make loans to you and allow you to write checks ("Check Advances"), make credit card purchases ("Credit Card Advances") and obtain cash advances ("Cash Advances"), (cumulatively referred to as "Advances"), and access the line of credit account (your "Credit Line" or "Account") by credit (debit) card, check, wire transfer or telephone, subject to your credit limit stated in Paragraph 11 (your "Credit Limit"). Advances are obtained by accessing your Credit Line through one of these methods. For Credit Card Advances, your merchant will prepare a sales draft or retail charge agreement. We may buy or accept assignments of these drafts and agreements, and we may make Cash Advances directly to you or permit you to obtain Cash Advances through FIRST TENNESSEE or other automated teller machines approved by us. You promise that the total balance of Advances will not exceed your Credit Limit. If we approve or permit any transaction(s) in excess of your Credit Limit, you agree to pay such excess on demand.

    3. **No Advances During Repayment Period.** You will not obtain Advances during the Repayment Period. We may dishonor any credit card transaction, check or other request for Advances presented to us after the Draw Period; however, we may honor such transactions in our discretion if they appear to us to have been made during the Draw Period.

    4. **Promise to Pay.** You promise (jointly and severally, if more than one Borrower has signed this Agreement) to pay to us the total amount of all Advances, all FINANCE CHARGES, fees and other charges you owe, whether such Advances are made to you or to anyone allowed to use your Account. Payment must be sent to us at the address included in your monthly billing statement.

    5. **Prepayment.** You can prepay your Advances in part at any time without penalty. However, unless waived in writing we will impose a fee if you close your Account within **3 YEARS** of the Effective Date of this Agreement. Refer to Section 20 for additional information on Early Termination.

    6. **Bills.** We will send you a billing statement ("Bill") each month reflecting Advances posted to your Account. We will also do this if there is a balance due us or if there is a credit balance due you of more than $1.00. Sales slips and checks are retained by us.

    7. **Payments.** You must make the minimum payment shown on your Bill ("Minimum Payment Due") within 30 days of the cycle closing date shown on your Bill. During the Draw Period, the Minimum Payment Due will be the sum of: (a) all FINANCE CHARGES that have accrued since your last Bill; (b) the Annual Fee, Late Fee, Returned Check Fee or Overlimit Fee, if any, imposed during that month; and (c) all past due payments. Making only the Minimum Payment Due during the Draw Period will not repay any of the principal. During the Repayment Period, the Minimum Payment Due will be the sum of (a) through (c) above, plus an amount to be computed by adding your "average daily balance subject to FINANCE CHARGE" on Credit Card Advances to that for Cash Advances and Check Advances and dividing the sum by the number of months remaining in the Repayment Period, unless the resulting amount is less than $50.00, in which case the Minimum Payment Due shall be full payment. Payments are applied in the order described in Paragraph 15. All of your indebtedness under this Agreement remaining at the end of the Term is immediately due and payable.

    8. **FINANCE CHARGE on Credit Card Advances.** (a) If you pay your new balance in full within 30 days of the cycle closing date shown on your Bill, we will not impose any FINANCE CHARGE on the Credit Card Advances.

    (b) If you do not pay your new balance in full within 30 days of the cycle closing date, we will impose a FINANCE CHARGE on Credit Card Advances, determined by multiplying your "average daily balance subject to FINANCE CHARGE" on Credit Card Advances by the periodic rate that applies to Credit Card Advances. The result is your FINANCE CHARGE on Credit Card Advances for that period.

    (c) Your "average daily balance subject to FINANCE CHARGE" will be computed as follows: (1) subtract any unpaid FINANCE CHARGE on Credit Card Advances from the balance on your Credit Card Advances at the beginning of each new billing cycle; (2) subtract payments and credits on the day they are posted to your Account from the previous day's ending balance and add Credit Card Advances on the day they are posted to your Account to the previous day's ending balance. The result is your daily credit card balance subject to FINANCE CHARGE; and (3) add these daily balances and divide the total by the number of days in the billing cycle. The result is your "average daily balance subject to FINANCE CHARGE" for Credit Card Advances.

    9. **FINANCE CHARGES on Cash Advances and Check Advances.** (a) You are obligated to pay a FINANCE CHARGE on all Cash and Check Advances from the day advanced to the day full payment is posted to your Account.

    (b) We will compute your FINANCE CHARGE on Cash and Check Advances in the following manner: (1) subtract any unpaid FINANCE CHARGE from the previous balance of your Cash and Check Advances at the beginning of each new billing cycle on these amounts; (2) subtract payments and credits from the previous day's ending balances and add new Cash and Check Advances to the previous day's ending balance to determine the balance of your Cash and Check Advances for each day of the monthly billing period. The result is your daily balance subject to FINANCE CHARGE; (3) at the end of the billing cycle, add these daily balances and divide the total by the number of days in the billing cycle. The result is your "average daily balance subject to FINANCE CHARGE for Cash and Check Advances"; and (4) finally we multiply this average daily balance by the periodic rate. The result is your FINANCE CHARGE on Cash and Check Advances for the billing period.

    10. **Rates.** (a) Your ANNUAL PERCENTAGE RATE and monthly periodic rate will be variable interest rates which can change monthly and will increase if the Prime Rate (defined below) increases. If a FINANCE CHARGE is imposed on your Account, an increase in your monthly periodic rate and corresponding ANNUAL PERCENTAGE RATE will result in an increase in your FINANCE CHARGE and most likely an increase in your Minimum Payment Due. Your ANNUAL PERCENTAGE RATE does not include costs other than interest; it will never exceed the lesser of 21% per annum or the maximum we are permitted to charge by law.

    (b) Your ANNUAL PERCENTAGE RATE for each monthly billing cycle will be a variable rate equal to the Prime Rate (defined below) on the Determination Date (defined below) plus the Rate Differential (Margin) specified below. Both Prime Rate and Rate Differential are expressed as annual rates of interest. Your monthly periodic rate will be determined by dividing the ANNUAL PERCENTAGE RATE by twelve. "Prime Rate" means that rate published as the Prime Rate in the Money Rates Section of *The Wall Street Journal*, on the Determination Date. If more than one Prime Rate is published, the highest will apply.

Initials: _____    Initials: _____    Initials: _____    Initials: _____
BNK-MultiState FHHLC/RETL (except CT, NY, TX, and WV)                1 of 5
Rev. 06-10-06

REPRESENTS REDACTED INFORMATION

"Determination Date" means the date on which your billing cycle closes (or the preceding publication date if *The Wall Street Journal* is not published on the date which your billing cycle closes.) The Prime Rate in effect on the Determination Date will be effective from the first day of that same billing cycle. Your current **ANNUAL PERCENTAGE RATE** is   8.250   %.* Your current monthly periodic rate is   0.687   %.* Your Rate Differential (Margin above Prime) is   0.000   %. *These rates are estimates based on the Prime Rate of   8.250   % reported in *The Wall Street Journal* on   3/16/2007  ,   which may not be the Prime Rate published on the first Determination Date for your Account.

11. **Specific Information.** Credit Limit $   125,000.00  ; Draw Period   10   Years; Repayment Period   10   Years.

12. **Fees and Charges.** You agree to pay an Annual Fee to maintain your Account, as follows. You will not be charged an Annual Fee during the first year. On each anniversary of the date of this Agreement, you will be charged an Annual Fee of   $50.00, waived first year   if the average daily balance of your Account for the past 12 months is less than $25,000.00. If your Minimum Payment Due is not received within 15 days after the payment date shown on your Bill, we will charge your Account a Late Fee of the greater of $5.00 or 5.00% of the Minimum Payment Due, not to exceed $50.00. However, you will not be required to pay a Late Fee more than once on the same late amount even if that amount remains past due for more than one billing period. You agree not to obtain Advances from the time a Late Fee is imposed until you bring your Account current by paying the delinquent Minimum Payment. An Overlimit Fee of $15.00 will be charged for each Purchase, Cash Advance or Loan on your Account if the resulting account balance is over your Credit Limit. A Returned Check Fee of $20.00 will be charged each time a check you give us as payment on your Account is returned unpaid or is not honored by the drawee bank. If you terminate this Account within   3 YEARS   of the Effective Date, you must pay an Early Termination Fee of   $500.00  . Refer to Paragraph 20 of this Agreement for additional information on termination by Borrower. On signing this Agreement, you also owe the following one-time fees and charges which will be added to your Bill as Advances unless you pay those fees when you sign this Agreement. You acknowledge all fees and charges required by this Agreement, including all FINANCE CHARGES, as set forth below and in any Settlement Statement (form HUD-1 or HUD-1A) included in your closing documents, which provides the final and complete itemized list of settlement charges to be fair and reasonable. The Settlement Statement is incorporated by reference into the Agreement.

| FINANCE CHARGES | Amount | Closing Costs | Amount |
|---|---|---|---|
| Commitment/ Discount | 0.00 | Notary | 0.00 |
| Origination Fee | 0.00 | Appraisal/Valuation | 0.00 |
| Flood Certification | 0.00 | Credit Report | 0.00 |
| Processing Fee | 0.00 | Pest Inspection | 0.00 |
| Administrative Fee | 0.00 | Title Examination | 0.00 |
| Underwriting Fee | 0.00 | Title Search/Abstract | 0.00 |
| Attorney Fee | 0.00 | Title Insurance | 0.00 |
| Settlement Fee or Closing Agent Fee | 0.00 | Lender's Coverage | 0.00 |
| Tax Service Fee | 0.00 | Owner's Coverage | 0.00 |
| Courier Fee | 0.00 | Recording Fee | 0.00 |
| Title Co. Courier Fee | 0.00 | City/ County Tax/ Stamps | 0.00 |
| Wire Fee | 0.00 | State Tax Stamps | 0.00 |
| E-Mail Loan Document Fee | 0.00 | Survey | 0.00 |
| Rush Service Fee | 0.00 | Title Insurance Binder | 0.00 |
| Fax Fee | 0.00 | Document Preparation Fee | 0.00 |
| NOT APPLICABLE | 0.00 | | |
| NOT APPLICABLE | 0.00 | | |

Your cost of credit may be reduced by Lender, broker or other credits. When available, credits are used to offset finance charges and, to the extent of any remaining credit, to offset closing costs. Fees that have been fully offset by credits are not itemized in your disclosures.

13. **Security.** All Advances made up to the Credit Limit, FINANCE CHARGES, fees and other charges, and all collection expenses, and expenses incurred to protect the value of the residential real property pledged as security for the debt ("Collateral") are secured by a deed of trust, deed to secure debt or mortgage, (hereinafter referred to as "Collateral Documents") dated   March 20th, 2007  , on real estate in the County/City of   Arlington  , State of   Virginia   (the description of such real estate as contained in said Collateral Documents being incorporated herein by reference); other collateral or property securing other Advances with us may also secure the indebtedness under this Agreement. You could lose your home if you do not meet the obligations in your Agreement with us.

14. **Receipt of Copy.** You acknowledge that you have read, understood and received a copy of this Agreement. You understand that each Borrower who signs the Agreement will be fully responsible for payment of the total amount due. You also acknowledge receipt at the time of your application of a Home Equity Disclosure Statement for this Account and a separate Home Equity Brochure.

15. **How We Apply Your Payments.** We will apply your payments in this order: (a) FINANCE CHARGES, (b) Annual Fee or Late Fee, Returned Check Fee or Overlimit Fee, if any; (c) unpaid amounts from prior Bills; (d) amounts due on current Bill; and (e) Advances posted, but not yet billed.

16. **Insurance.** You promise to maintain insurance on Collateral, as set forth in the Collateral Documents. You must purchase such insurance from a licensed insurer (if such a license is required by applicable law), and furnish proof satisfactory to us of such insurance. You may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove your choice, which will not be exercised unreasonably.

17. **Acceleration by Lender.** At our option, your entire indebtedness under this Agreement, together with FINANCE CHARGES and any other fees and charges you owe, will become immediately due and payable, and our commitment to make further Advances will terminate, without notice or demand to you, if any of the following events occurs: (a) you fail to make any payment as required by this Agreement; (b) you commit or have committed fraud, or if you make or have made a material misrepresentation, in any way connected with this Agreement; or (c) any action or inaction by you adversely affects the Collateral or any right or interest of ours in the Collateral, including but not limited to the sale, transfer, encumbrance or impairment of the Collateral or any right or interest of ours in the Collateral, or the failure to maintain satisfactory insurance.

18. **Other Limitations on Credit by Lender.** We will mail or deliver to you written notice of any action authorized by this paragraph, as required by applicable law. The notice will contain the specific reason(s) for such action. At our option, we may (a) reduce your Credit Limit (including to the extent permitted by law a reduction of the Credit Limit below the then existing level of indebtedness), (b) suspend or reduce our commitment to make Advances, or (c) take any or all such actions, for any period in which any of the conditions stated below shall occur:

(1) The value of the Collateral declines such that the initial difference between the Credit Limit and available equity (based on the Collateral's appraised value on application for the Credit Line) is reduced by 50% or more, or the value of the Collateral otherwise declines significantly (the value determined by an appraiser of our choice, if obtained, shall be conclusive);

(2) We reasonably believe that you will be unable to fulfill any of your payment obligations under this Agreement because of a material change in your financial circumstances caused or evidenced by the following: death, physical or mental incapacity, loss of employment, significant reduction in income or net worth, insolvency, failure to pay other debts, the filing of a petition in bankruptcy by or against you, or your representation that you will be unable to fulfill any payment obligation;

(3) You are in default of a material obligation under this Agreement or the Collateral Documents, including, but not limited to your obligation to make required payments, to provide true and complete financial information on request, to act so as not to adversely affect the Collateral or any right of ours in it, to occupy the Property as principal residence or to keep other material obligations and promises whether or not the breach of the same might not be a basis for acceleration;

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for in this Agreement;

(5) Our rights in the Collateral are adversely affected by government action;

(6) We are notified by a regulatory agency that continued extension of credit constitutes an unsafe and unsound practice;

(7) The maximum **ANNUAL PERCENTAGE RATE** is reached, but such event shall not in itself permit the reduction of the Credit Limit to a level below the outstanding balance of indebtedness; and

(8) Any Borrower requests a reduction of the Credit Limit or any limitation upon the right to obtain Advances.

19. **Reinstatement of Credit.** Upon cessation of conditions giving rise to limitations on credit imposed under Paragraph 18, we will be obligated to reinstate your former Credit Limit or our commitment regarding Advances only if all the following conditions are met: (a) the priority of our security interest in the Collateral for further extensions of credit has not be lowered; (b) you initiate and submit an application in writing for reinstatement; (c) you furnish all relevant information we may request in connection with your application; and (d) you pay, to the extent permitted by applicable law, our reasonable costs of any appraisal or credit report obtained to determine that the condition causing our action no longer exists. Furthermore, we are obligated to reinstate your Credit Limit only if you will not acquire a right of rescission as a result. If limitations were imposed at your request, credit privileges need not be reinstated unless all Borrowers request reinstatement.

20. **Termination by Borrower.** Any provision in this Agreement to the contrary notwithstanding, any Borrower may terminate this Credit Line by (a) giving us written notice of termination, (b) destroying or returning to us all checks and other devices issued or used in connection with the Credit Line, and (c) paying the Account in full. On and after the date on which we receive (a), (b), and (c) above, we shall not be obligated to any Borrower to make further Advances. But if any Borrower obtains Advances after such date, that Borrower and all other Borrowers will remain jointly and severally liable for those transactions, including any FINANCE CHARGES that may accrue on such Advances. Unless waived in writing, you must pay an Early Termination Fee of $500.00    if you close your account and terminate this Agreement within **3 YEARS**    following the Effective Date. You acknowledge that we: (i) have entered into this Agreement with the expectation that it would not be terminated within the initial **3 YEARS**    following the Effective Date, (ii) would not otherwise have been willing to enter into this Agreement on the terms herein for less than **3 YEARS**   , and (iii) would not otherwise have incurred expenses and obligations had we known that you would terminate this Agreement within **3 YEARS**   . You acknowledge that we could suffer loss and additional expenses which are difficult or impractical to ascertain as a result of termination within **3 YEARS**   . The Early Termination Fee is a good faith resolution by you and us of the expense we may incur as a result of early termination. It is not intended as a penalty but as a good faith estimate of such expense.

21. **Financial Statements and Appraisals.** If during the Term of this Agreement we elect to request a current personal financial statement, you agree to provide the requested information in a form satisfactory to us within 10 days of such a request. You agree that we may have the Collateral appraised at any reasonable time we choose during the Term of this Agreement.

22. **Collection Costs.** If we employ an attorney to collect any amounts due under this Agreement or to protect the Collateral, you promise to pay all costs of litigation and collection, including all costs of repossessing and selling the Collateral and reasonable attorney's fees, as permitted by law.

23. **Returns and Refunds.** Cash refunds are not allowed for the returned Credit Card Advances made on your Account. Instead you will receive a credit to your Account for the amount of the return after we receive the credit from the seller. This credit will be filled out by the seller of the goods and services who will give you a copy. It is the seller's responsibility to mail or deliver the credit to us so we can credit your Account. We are not responsible for the seller's failure to mail or deliver the credit promptly.

24. **Releases or Delays in Enforcement.** If we choose, we may, without notice, (a) delay enforcing any of our rights under this Agreement or under the Collateral Documents, (b) extend the time allowed for making payments as many times as we choose, for any length of time, (c) waive or reduce any fees or charges and waive or reduce the interest rate or amount of the FINANCE CHARGE, (d) release all or any part of the Collateral, (e) accept instruments marked "paid in full" without discharging the maker or endorser beyond the amount of the instrument, (f) release any person who may be liable for the indebtedness under this Agreement, or (g) permit substitution of Collateral. Our action or inaction will not release or discharge you or our lien on the Collateral except to the extent that any such written release given by us expressly so states.

25. **Lost or Stolen Cards.** If your card is lost or stolen, you promise to notify VISA Traveler Service Center at once. In the Continental U.S., call 800-VISA911, and outside the Continental U.S. call 1-800-847-2911.

26. **Assignment.** We have the right to assign any amount you owe and also assign and transfer our rights under this Agreement.

27. **Amendment.** We reserve the right to change the terms of this Agreement, as permitted by law, including, but not limited to, changes in the index and Margin used to compute interest if the index described in Paragraph 10 of this Agreement is no longer available, changes to which you agree in writing, changes which will benefit you, and insignificant changes.

28. **Notices.** (a) Any notice or demand from us about your Account will be mailed to you at your address appearing in our records, and any such notice will be effective when mailed. Notice to one Borrower will be notice to all. Any notice to us, other than to make payment or correct a billing error, must be mailed to P.O. Box 132, Memphis, TN 38101, and will be effective upon the expiration of one business day following receipt by us at that address. Payment and billing error addresses will be included in your Bill.

(b) We are entitled to act upon any notice from any Borrower which does not conform to all of the requirements set forth in this Agreement, but we are not obligated to act upon a notice which does not substantially conform to such requirements. If we act upon any non-conforming notice, we shall not therefore be liable to any Borrower.

Initials:_____    Initials:_____    Initials:_____    Initials:_____

BNK-MultiState FHHLC/RETL (except CT, NY, TX, and WV)    3 of 5    FH6D55C
Rev. 06-10-06

29. **Invalidity.** If any portion of this Agreement is declared invalid or unenforceable, the remainder will not be affected and will remain in full force and effect. If a portion is unenforceable under a particular set of circumstances, it shall not be unenforceable under all circumstances, it being intended that the Agreement is given its broadest possible effect.

30. **Applicable Law.** This Agreement will be governed by applicable Federal law and the law of Tennessee. However, the Security Instrument will be governed by the law of the state in which the real property is located, unless this law is preempted by Federal law. Federal law authorizes a national bank (such as Lender) to charge interest rates and fees permitted by the law of the state in which such a bank is located (in the Lender's case Tennessee), regardless of the location of the borrower or the property. Other Federal law may preempt various aspects of the law of the state in which the Lender is located, as well as the law of the state in which the borrower or the property is located.

31. **Tax Implications.** We have no responsibility for the tax effect of this Agreement or the impact upon your taxes of any payments made. You should consult a tax advisor regarding the deductibility of interest, fees and charges under this Agreement.

32. **Maryland Recordation Tax.** If the real property securing this Agreement is located in Maryland, you may, at your option, pay the recordation tax on your entire Credit Limit at closing, or you may pay the required tax on the amount of each advance at the time you obtain each advance. If you pay the recordation taxes on your entire Credit Limit at closing, your tax liability will be satisfied, regardless of the amount of debt you may actually incur. If, instead, you elect to pay the required tax as you obtain Advances, you will have seven days after obtaining each Advance to file with the clerk of the court where our Deed of Trust is recorded a verified statement of the amount of additional debt incurred. You will be responsible for paying to the clerk the applicable recordation tax on that additional debt and any filing fee. If you fail to do so, you may be penalized as provided in Section 14-1012 of the Tax-Property Article of the Maryland Code. That section provides for penalties of a fine up to $500 or up to six months imprisonment.

33. **Entire Agreement.** This Agreement and the Collateral Documents set forth the terms of the legal obligation between you and us, and represent the entire understanding between you and us concerning the subject matter of this Agreement.

## YOUR BILLING RIGHTS
## KEEP THIS NOTICE FOR FUTURE USE.

NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

If you think your Bill is wrong, or if you need more information about a transaction on your Bill, write us on a separate sheet at the address shown on your Bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first Bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information describe the item you are not sure about.

If you have authorized us to pay your Bill automatically from your savings or checking Account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us 3 business days before the automatic payment is scheduled to occur.

YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the Bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply an unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your Bill that are not in question.

If we find that we made a mistake on your Bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your Bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50.00 of the questioned amount, even if your Bill is correct.

SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of the property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
    (i)  You must have made the purchase in your home state, or, if not within your home state, within 100 miles of your current mailing address; and
    (ii)  The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Executed the day first written above.

Borrower's Signature _____  Borrower's Signature _____
    JULIANA RIAHI

Borrower's Signature _____  Borrower's Signature _____

By signing above, each of the Borrower(s) acknowledge receipt of a complete copy of this Agreement on the Effective Date.

BK 19389 0150    06/12/2007 13:53:52

Web Cover Sheet Version 2.0                                                Page 1 of 1

# Fairfax County Land Records
# Cover Sheet

Exhibit B

**Instruments**
  TRUST

**Grantor(s)**
  RIAHI, JULIANA _I_N

**Grantee(s)**
  RICE, LARRY_I_T

| Consideration | 125000.00 | Consideration % | 100 |
|---|---|---|---|
| Tax Exemption | | Amount Not Taxed | |
| DEM Number | | Tax Map Number | |
| Original Book | | Original Page | |
| Title Company | HORIZON TITLE & ESCROW PARTNERS, LLC | Title Case | |
| Property Descr. | LOT 53 SEC 3 EVERMAY | | |
| Certified | No | Copies | 0 | Page Range | |



Print Cover Sheet

/48

REPRESENTS REDACTED INFORMATION

https://www.fairfaxcounty.gov/cpan/coversheet/cover_request.cfm          6/11/2007

BK 19389 0151

This instrument Was Prepared By:
FIRST HORIZON HOME LOAN CORPORATION

800 GREEN VALLEY ROAD, SUITE 204
GREENSBORO, NC 27408
After Recording, Return To:
FHLC - POST CLOSING MAIL ROOM
1555 W WALNUT HILL LN #200 MC 6712
IRVING, TX 75038

PLEASE RETURN TO:
HORIZON TITLE & ESCROW, INC.
6862 ELM STREET SUITE 800
McLEAN, VA 22101
CASE NO. _____

## VIRGINIA DEED OF TRUST
## THIS IS A CREDIT LINE DEED OF TRUST

PARCEL NUMBER: County: City:

[X] THIS IS A REFINANCE OF A DEED OF TRUST RECORDED IN THE CLERK'S OFFICE, CIRCUIT COURT OF
_____, VIRGINIA, IN DEED BOOK _____, PAGE _____, IN THE
ORIGINAL PRINCIPAL AMOUNT OF $ _____, AND WITH THE OUTSTANDING PRINCIPAL
BALANCE WHICH IS $ _____.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR TERMS THEREOF BEING
MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

THIS DEED OF TRUST is made on this 20th day of March , 2007,
among the Grantor
JULIANA RYANY

(herein "Borrower"),
Larry Rice , of
12700 Fair Lakes Circle Suite 400, Fairfax, VA 22034 Trustee,
and the Beneficiary,
FIRST HORIZON HOME LOAN CORPORATION
Grantee, whose address is
4000 Horizon Way, Irving, Texas 75063
(herein "Lender").

This is a "Credit Line Deed of Trust" within the meaning of Section 55-58.2 of the Code of Virginia (1950), as amended. For
purposes of such section, (i) the name of the noteholder secured by this deed of trust is:
FIRST HORIZON HOME LOAN CORPORATION
(ii) the address at which communications may be mailed or delivered to the noteholder is:
4000 Horizon Way, Irving, Texas 75063 , and
(iii) the maximum aggregate principal amount to be secured is $ 125,000.00 .
BORROWER, in consideration of the indebtedness herein recited and the trust herein contained, irrevocably grants and conveys to
Trustee, in trust with the power of sale, the following described property located in the State of Virginia, to wit:
All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

VA HELOC FHEL FHHLC Corres. 09-04       1 of 6       FH6D390

BK 19389 0152

which property has the address of:   1226 POTOMAC SCHOOL ROAD
MC LEAN, Virginia 22101                                                              "Property Address".

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's Home Equity Line of Credit Agreement and Disclosures under the Federal Truth-In-Lending Act dated   March 20th, 2007          and extensions and renewals thereof (herein "Note"), in amounts fluctuating from time to time up to MAXIMUM PRINCIPAL SUM of ONE HUNDRED TWENTY FIVE THOUSAND & 00/100
Dollars(U.S.$            125,000.00), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, to be paid on   APRIL 1, 2027          , the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreement of Borrower contained herein.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower covenants and Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal and interest indebtedness evidenced by the Note and all other charges as provided in the Note.

2. **Payments of Taxes, Insurance and Other Charges.** Borrower will pay, when due, all taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any).

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Note and paragraph 1 may be applied by Lender first to interest and other charges payable on the Note and then to the remaining principal of the note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

VA HELOC FHEL FHHLC Corres. 09-04                            2 of 6                                         FH6D391

BK 19389 0153

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or there is any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminated in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note: (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust and to waive the benefit of co-signors(s)

VA HELOC FHEL PHHLC Corres. 09-04                3 of 6                                   FH6D392

BK 19389 0154

exemption as to this obligation, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without, releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Law That Governs This Security Agreement.** This Security Instrument is governed by federal law, and to the extent that federal law does not apply, then this Security Instrument shall be governed by state law where the Property is located. If any term of this Security Instrument conflicts with the laws, all other terms of this Security Instrument will remain in effect if they can be given effect without the conflicting term.

14. **Borrower's Copy.** Borrower shall be furnished a copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, as assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by the Lender if exercise is prohibited by Federal law as of the date of this Deed of Trust.

This covenant shall run with the Property and shall remain in effect until the debt secured hereby is paid in full and this security instrument is released.

If a Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to the Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.

BK 19389 0155

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which the Property or some portion thereof is located, and by such additional or different form of advertisement as the Trustee may deem advisable, if any. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold with special warranty of title. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, Trustee's fees of 5% of the gross sales price, reasonable attorney's fees and costs of title evidence; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Deed of Trust; and (d) the excess, if any, to the persons legally entitled thereto. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at such sale.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligation secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignments of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by the Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to release this Deed of Trust and shall surrender all notes evidencing indebtedness secured by this Deed of Trust. Trustee shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender may from time to time at Lender's discretion remove any Trustee appointed hereunder and appoint a successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Deed of Trust and by applicable law.

22. **Identification of Note.** The Note is identified by a certificate on the Note.

BK 19389 0156

23. **Waivers.** Except to the extent prohibited by law, Grantor waives the benefit of the homestead exemption as to this obligation and any rights of appraisement and reinstatement.

GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ANY REQUIREMENT OR OBLIGATION THAT THE LENDER OR THE TRUSTEE PRESENT EVIDENCE OR OTHERWISE PROCEED BEFORE ANY COURT, CLERK, OR OTHER JUDICIAL OR QUASI-JUDICIAL BODY BEFORE EXERCISE OF THE POWERS OF SALE CONTAINED IN THIS SECURITY INSTRUMENT AND IN SECTION 55-59 AND SECTIONS 55-59.1 THROUGH 55-59.4 OF THE CODE OF VIRGINIA (1950), AS AMENDED.

24. **Line of Credit.** The debt secured hereby includes a revolving line of credit provision. Although the debt may be reduced to a zero balance, this security instrument will remain in effect until released.

---

Request for Notice of Default and Foreclosure
Under Superior Mortgages or Deeds of Trust

I(We) and Lender request the holder of any mortgage, deed of trust, or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and sealed this Deed of Trust.

_____, Borrower    _____, Borrower
JULIANA RIAHI

_____, Borrower    _____, Borrower

State of Virginia        )
                         ) ss:
City/County of  FAIRFAX  )

The foregoing instrument was acknowledged before me on this  20th day of March 2007
by
JULIANA RIAHI

My Commission expires: _____    _____, Notary Public

VA HELOC FHEL FHHLC Corres. 09-04

NANCY R. HAWES
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES DECEMBER 31, 2009

FH6D395

*6*

BK 19389 0157

LEGAL DESCRIPTION

All that certain lot or parcel of land situate in the County of Fairfax, Commonwealth of Virginia, and being more particularly described as follows:

LOT 53, SECTION 3, EVERMAY, as the same appears duly dedicated, platted and recorded in Deed Book 3319, at Page 279, among the land records of Fairfax County, Virginia.

AND BEING the same property as conveyed unto the Grantor by Deed dated 03/01/2001, and recorded on 03/07/2001, in Deed Book 11755, at Page 0374, among the aforementioned land records.



BK 19389 0158

## RIDER TO THE DEED OF TRUST / MORTGAGE / SECURITY DEED

Date:    3/20/2007

The escrow of taxes and insurance required in your DEED OF TRUST/MORTGAGE/SECURITY DEED to FIRST HORIZON HOME LOAN CORPORATION, a KANSAS corporation is hereby waived and you are notified that you are not required to deposit with FIRST HORIZON HOME LOAN CORPORATION, a KANSAS corporation any of the amounts set forth in said paragraph. This waiver does not, in any way release you from your obligation to make escrow payments of taxes and insurance to the holder of any prior mortgage, nor does it relieve you of your obligation to keep taxes and insurance premiums current with respect to the mortgaged property.

RECEIPT ACKNOWLEDGED:

_____    3/20/07            _____    _____
JULIANA NYAHI               Date                                          Date

_____    _____            _____    _____
                            Date                                          Date

HELOC RIDER
40109(8/96)(0706)                                                    (01/03)

8

06/12/2007
RECORDED FAIRFAX CO VA
TESTE /s/ J. Fry
        CLERK